SIGAL CHATTAH
United States Attorney
District of Nevada
Nevada Bar No. 8264
LAUREN M. IBANEZ
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Email: lauren.ibanez@usdoj.gov
*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MOSQUEDA,<br><br>Defendant. | Case No. 2:24-cr-00015-RFB-NJK<br><br>**Government's Sentencing Memorandum** |

The United States of America, through the undersigned, submits the following Sentencing Memorandum for the Court's review prior to sentencing. Sentencing is currently set for April 16, 2025.

I. **Factual Background**

On January 24, 2024, a federal Grand Jury sitting in Las Vegas, Nevada, issued a criminal indictment charging the Defendant James Mosqueda with one count of Engaging in the Business of Dealing or Manufacturing Firearms Without a License, one count of Trafficking in Firearms, one count of Distribution of a Controlled Substance (Methamphetamine), and five counts of Unlawful Transfer or Possession of a Machinegun. *See* ECF No. 18.

1

On November 21, 2024, Defendant entered into a plea agreement and plead guilty to an eight-count criminal information. *See* ECF No. 33. To support his guilty plea the Defendant admitted the following:

Beginning in September 2023 and continuing through November 2023, Defendant engaged in the business of dealing firearms without a Federal Firearms License to do so. Defendant admits that he was not and is not licensed to manufacture and sell privately made firearms. Specifically, as described below, Defendant manufactured and sold firearms and machineguns to ATF confidential informants (CIs) and a HSI undercover agent (UC):

- On or about September 26, 2023, Defendant sold a 9mm privately made firearm ("PMF") and a Heckler and Koch USP .45 pistol bearing serial number: 29-087696, to CI's in exchange for $1,800.00.
- On or about October 2, 2023, Defendant sold a 9mm PMF, a silencer, and 13 Machinegun Conversion Devices ("MCDs") to a CI in exchange for $1,400.00.
- On or about October 12, 2023, Defendant sold a 9mm PMF and 55 MCDs to a CI in exchange for $1,400.00.
- On or about October 20, 2023, Defendant sold a 9mm PMF, 10 Glock switch style MCDs, 32 AR drop-in style MCDs, to a CI exchange for $1,000.00.

Defendant admits that he knew, or was aware of, the essential characteristics of the Machinegun Conversion Devices (MCD's). Specifically, that a MCD is a "machinegun" as defined by 18 U.S.C. § 921(a)(24) and 26 U.S.C. § 5845(b) and is a "firearm" as defined in 26 U.S.C. § 5845(a)(6). The MCD's did not bear a manufacturer's mark, identification or serial number as required by 26 U.SC. § 5842 and converts semi-automatic firearms into fully automatic firearms. Defendant also admits that he knew or had reason to believe that his

conduct affected interstate commerce and would result in the transport, transfer, or disposal of a firearms to an individual whose possession or receipt of the firearm is unlawful.

Defendant admits that during the October 20, 2023, purchase, Defendant also sold 1,061 gross grams of methamphetamine to a HSI undercover ("UC") agent in exchange for $2,600.00. Defendant knew that what he sold was methamphetamine or some other federally controlled substance.

The activity described above took place in the State and Federal District of Nevada. *See* ECF No. 33, ¶ 13.

## II.  Guideline Calculations

The Presentence Investigation Report ("PSR") correctly calculates a base level offense of 34 pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(3). *See* PSR ¶ 38. The PSR identifies a two-level increase for a specific offense characteristic pursuant to U.S.S.G. § 2D1.1(b)(1). *See* PSR ¶ 39. The parties' plea agreement excluded this specific offense characteristic. The PSR also provides a three-level deduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b). *See* PSR ¶¶ 45-46. The PSR then calculated the total offense level to be 33, coupled with a criminal history category of II, which results in an advisory guideline range of 151 to 188 months. *See* PSR ¶ 94. The Probation Officer recommends a total aggregate sentence of 97 months custody with 4 years of supervised release to follow. *See* PSR, p. 28.

## III.  Argument

### A. Term of Imprisonment

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)

(quoting 18 U.S.C. § 3553(a)). In fashioning a sentence, the Court considers the "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants, and the need for victim restitution. *See* 18 U.S.C. § 3553(a).

In comporting with the terms of the plea agreement, the parties are jointly recommending a custodial sentence of 87 months after taking into consideration all of the factors in 18 U.S.C. § 3553(a). The requested 87 months is the low end of the guidelines range when utilizing a total offense level of 34, as calculated by the parties, and the Defendant's criminal history category.

The offense conduct in this case is serious. The Defendant manufactured and sold firearms. Notably, six firearms were privately manufactured, meaning they have no serial number and therefore untraceable. *See* PSR ¶ 31. Additionally, the Defendant manufactured and sold machine gun conversations devices, utilizing a 3-D printer. The PSR calculates that the Defendant is responsible for *one hundred and sixty* machine gun conversation devices. *Id*. These devices make inherently dangerous firearms significantly more dangerous by converting semi-automatic firearms into fully functioning machineguns. Such firearms are not designed to function as machineguns thus making it incredibly difficult to control and aim. Machine gun conversion devices add an even more deadly layer to firearm violence and endangers the safety of all members in the community. In addition to firearms, the Defendant also sold 876.8 grams of methamphetamine ice. *Id*. Methamphetamine is a Schedule II narcotic that is often abused and can result in violent behavior. Despite this, the Defendant distributed a significant amount of methamphetamine into the community, ignoring the dangers this drug poses.

The Defendant's age should not excuse his criminal behavior. The Defendant's actions were dangerous, and he needs to be held accountable for such. The Defendant had no hesitation in selling firearms to felons, stating "that's one of the risks" or exposing his four-year old daughter to such dangerous weapons. *See* PSR ¶ ¶ 29 and 114. The Defendant knew he was putting dangerous weapons and drugs into the community and simply did not care about the consequences. Based on the Defendant's limited criminal history and the seriousness of the offenses, the government submits that an 87-month sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law and provide just punishment.

### B. Supervised Release

In terms of supervised release, the government concurs with the recommendation of the PSR, that the Defendant be subjected to a four-year term of supervised release. In addition to keeping the community safe, supervised release helps to address the concerns noted in the PSR. The government submits that any likelihood that the Defendant has to re-offend will be significantly reduced if he remains accountable under supervision. The government further submits that all of the recommended conditions are reasonably related to the goal of deterrence, protection of the public, rehabilitation of the defendant, and involve no greater deprivation of liberty than is reasonably necessary for purposes of supervised release.[1]

In addition to the standard conditions of supervised release, the PSR recommends special conditions for supervised release. *See* PSR, pp. 31-32. The government agrees with Probation's recommendation. Notably, there is a condition of "no gang affiliation." While the Defendant denied being affiliated with any criminal gang, he did admit to being a "South

---

[1] To date, the Defendant has not objected to any of the recommended conditions of supervised release.

5

Sider" and acknowledged that he would "hang out" with Southsiders criminal street gang—a faction of the Sureños prison gang. *See* PSR ¶¶ 29 and 64. Imposing this condition will provide Defendant the opportunity to stay away from the gang lifestyle and engage in any future criminal activity. Supervised release is an important part of sentencing. Imposing such conditions, or setting parameters of supervision, allows the probation officer to work with the Defendant and facilitate reintegration to the community. Moreover, it is an integral tool used to ensure that once the Defendant is released from custody, he can become a productive member of society and with the assistance of the probations officer, resist the temptations of a criminal lifestyle and be a law-abiding citizen. Given the significant offenses to which Defendant plead guilty and the Defendant's actions, four years of supervised release is appropriate.

### IV.   Conclusion

The government respectfully requests that this Honorable Court impose a sentence of 87 months imprisonment, followed by a four-year term of supervised release.

DATED:  April 9, 2025

Respectfully submitted,

SIGAL CHATTAH
United States Attorney

/s/  *Lauren Ibanez*

Lauren Ibanez
Assistant United States Attorney